METROPOLITAN LIFE INSURANCE
COMPANY, a foreign corporation,
Plaintiff,

v.

Claudetta PERSON, S. Jane Allison,
Joyce Slavik, Paul L. Sova, Jr., Paula
M. Sova and Shannon R. Sova, Defendants.

and

S. Jane ALLISON and Paula M. Sova,
Defendants and Cross Plaintiffs,

v.

Claudetta PERSON, Joyce Slavik, Paul
Sova, Jr., and Shannon R. Sova, Defendants and Cross Defendants.

and

S. Jane ALLISON and Paula M. Sova,
Defendants and Counter Plaintiffs,

v.

METROPOLITAN LIFE INSURANCE
COMPANY, a Foreign Corporation,
Plaintiff and Counter Defendant.

and

S. Jane ALLISON and Paula M.
Sova, Third Party Plaintiffs,

v.

GENERAL MOTORS CORPORATION,
a foreign corporation, Third Party
Defendant.

Civ. A. No. 90–CV–40229–FL.

United States District Court,
E.D. Michigan, S.D.,
at Flint.

Sept. 3, 1992.

Richard A. Patterson, Bloomfield Hills, Mich., for Met Life.

Richard J. Behm, Flint, Mich., for plaintiff.

John R. Moynihan, Flint, Mich., for defendants.

Daniel G. Galant, Maurice G. Jenkins, Detroit, Mich., for GM.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

This case involves several interesting questions of ERISA law. For reasons discussed, *infra*, the Court DENIES General Motors' Motion to Dismiss; DENIES Metropolitan Life's Motion for Summary Judgment; and DENIES Claudetta Person, Joyce Slavik, and Paul Sova, Jr.'s Motion for Summary Judgment.

## FACTS AND PROCEDURAL HISTORY

Before the Court are three dispositive motions by Cross–Defendants arising from the payment of an employment-issued life insurance policy to a decedent's mother instead of his child, in spite of a state divorce decree requiring the decedent to name the child as beneficiary.

This case has a complex procedural history involving a prior dispute over the proceeds of survivor benefits between Cross-plaintiffs, S. Jane Allison and her child, Paula Sova, with Cross–Defendants Joyce Slavik, a prior ex-wife of the decedent, and her two children. That issue has previously been decided by this Court, *See* Order of January 2, 1992, and the only issues that remain are those addressed in this Memorandum.[1]

Cross–Plaintiff Allison (then S. Jane Sova) and Paul Sova (Decedent) were divorced in Genesee County Circuit Court on July 29, 1983, and the decree included a provision ordering Decedent to name Paula Sova as the beneficiary of his life insurance policy. The condition was included under the heading of "Support" and states:

> "Both parties shall forthwith irrevocably designate the within minor child as beneficiary [sic] of any fringe benefit employer-funded life insurance policies which they may have by virtue of their present or future places of employment and they shall each continue such beneficiary designation for as long as the minor child is subject to support as set forth herein. Further, each party may obtain additional insurance beyond their basic fringe benefit policy and may name anyone as the beneficiary of such additional policy or policies."

Sova Divorce Decree of July 29, 1983, Genesee County Circuit Court.

The only named child in the decree is Paula Melody Sova, born February 7, 1977. The divorce decree gave custody of Paula to her mother and denied Paul Sova unsupervised visitation with his daughter.

Prior to his marriage with Ms. Allison, Decedent had previously married and divorced Joyce Slavik. During the course of that marriage, he fathered a child, Paul Sova, Jr., and Ms. Slavik also gave birth to another child, Shannon Sova, who has been adjudged not to be Decedent's daughter. *See* Order of January 2, 1992.[2]

At the time of his death, Decedent owned a life insurance policy (Policy) from Met Life under the terms of his union contract with General Motors (GM), his employer from the mid–1970s until his death. Decedent never changed the beneficiary in his policy from his mother, now Claudetta Person (then Jachimovicz). Decedent passed away on September 30, 1989. Allison attended the funeral of her former husband and contacted GM on October 3 or 4, 1989 concerning her daughter, Paula's, interest in the life insurance policy pursuant to the divorce decree. On October 9, 1989, Cross–Defendant Claudetta Person filed a claim with Met Life for the life insurance proceeds. She asked that a portion of the proceeds be sent to Brown Funeral Home to cover the costs of burial for Decedent.

---

1. This case originated as an interpleader action brought by Metropolitan Life Insurance Co. (Met Life) as to which party should obtain survivor benefits. This court found that those benefits, provided under a separate policy from the life insurance, belonged equally to Paul Sova, Jr. and Paula Sova. The Court has also previously held that it could retain jurisdiction on the claims of Cross–Plaintiffs in the pending motions.

To clarify the parties:

| | |
|---|---|
| Decedent's mother | –Claudetta Person, |
| Decedent | –Paul Sova |
| 1st ex-Wife | –Joyce Slavik. |
| Child from Decedent and Joyce Slavik | –Paul Sova, Jr. |
| Joyce Slavik's daughter (not Decedent's) | –Shannon Sova |
| 2nd ex-Wife | –S. Jane Allison |
| Child from Decedent and S. Jane Allison | –Paula Sova |

2. The Paul Sova—Joyce Slavik (Sova) divorce decree contained a provision requiring Decedent to "maintain his present life insurance proceeds in effect, and he shall forthwith irrevocably designate the minor child of the parties hereto as beneficiary therein until such time as the obligation to support said child ceases." Judgment of Divorce (Not Contested), Genesee County Circuit Court, September 9, 1976. No party has argued that this provision is applicable in determining the outcome of this case.

Met Life sent a check to Ms. Person and the funeral home jointly in the amounts of $29,680.55 to Ms. Person and $3,913.06 to Brown Funeral Home on or about October 17, 1989.

At some point between October 4 and October 20, GM contacted Met Life regarding Allison's inquiry. A Met Life memorandum dated October 20 states, "She wanted to know why you paid claim? She was awaiting another divorce decree. Please pull file and call her on Monday." A second Met Life file memorandum dated Monday, October 23, 1989 states, "She told me that she received the divorce decree and it names the minor children as bene. I told her to mail it to me ..." An interoffice memo dated October 26, 1989 from Mike Catera to Carolyn Schmidt, GM Group Life Claims states, "Before we do anything, should I wait for a divorce decree." The response under "Action to be taken" states, "Call TCA unit to verify that kit has been sent, once account is established we can have a hold put on it. Call Joe Tovata in law explain situation and ask the best procedure to follow. I feel we'll have to wait for decree review it and then refer to law ...." Cross–Plaintiffs' Exhibit 1.

Cross–Plaintiff Allison states in her affidavit that she was requested by at least one person in GM's Regional Personnel Office in Flint to provide the office with a copy of the Judgment of Divorce, and that she did so upon return from the funeral to her home in Texas. She further states that she made telephone calls during the two week period surrounding Decedent's funeral in early October, 1989, and that she followed up with several telephone calls upon her return to Texas through the spring of 1990.

In January, 1990 Allison received a letter informing her that the life insurance proceeds had been paid to Ms. Person and that Ms. Allison's claim had been denied. Allison made further calls, and she received a second letter dated February 22, 1990 advising her that she had 60 days to file a claim for review. She sent a letter requesting an appeal on or about February 27, 1990, erroneously dated January 27, 1990, requesting an appeal. On April 13, 1990, she sent a follow-up letter to Met Life informing them that her appeal was never heard.

Met Life filed an interpleader action in August, 1990 over survivor benefits, a separate benefit provided by Met Life and GM under Paul Sova's employee contract. Cross–Plaintiffs filed the instant action against Met Life, alleging that Met Life breached a fiduciary duty to Paula Sova by paying the life insurance proceeds to Claudetta Person and Brown Funeral Home. The complaint contended Met Life knew or reasonably should have known that these were not the appropriate beneficiaries or assignees of the policy; failed to withhold payment until they knew for sure who was to receive the proceeds; failed to interplead the funds; failed to stop payment on the check after becoming aware of a controversy; and failed to promptly inform Ms. Allison that they had wrongfully or inappropriately paid the insurance benefits so she could promptly institute suit.

Met Life has filed a motion for summary judgment under Fed.R.Civ.P. 56. Met Life alleges that under ERISA, the claims by Cross–Plaintiffs are preempted; Met Life did not abuse its discretion in approving and paying Cross–Plaintiffs' claims; and Cross–Plaintiffs failed to exhaust administrative remedies.

Cross–Plaintiffs also sued GM, alleging that GM was an agent of Met Life, and that by failing to inform Met Life of Allison's claim to the insurance, and by failing to investigate Allison's claim, GM breached a fiduciary duty to Paula Sova. GM has filed a motion to dismiss under Fed. R.Civ.P. 12(b)(6) making essentially the same arguments as Met Life.

Cross–Plaintiffs also sued Claudetta Person, Decedent's mother, Joyce Slavik, Decedent's other ex-wife, and her children, Paul Sova, Jr. and Shannon Sova, for an accounting of the life insurance proceeds paid to Person by Met Life. Cross–Plaintiffs allege that Person shared the proceeds with Slavik and her children. Cross–Defendants Slavik, Paul Sova, Jr., Shannon R. Sova, and Claudetta Person have filed a

motion seeking summary judgment in Cross–Plaintiffs' suit against them.[3] They also contend that the proceeds were correctly paid to Ms. Person, and that therefore they owe no accounting to Cross–Plaintiffs.

All parties seek attorney's fees.

### LEGAL ANALYSIS

### I. Standards of Review

#### A. *GM's Motion to Dismiss*

Under a Rule 12(b)(6) motion, the factual allegations of the complaint are taken as true. *Zinermon v. Burch,* 494 U.S. 113, 117, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990). If as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) (internal quotation omitted).

#### B. *Met Life's and Person et al's Motions For Summary Judgment*

The standard for Met Life's and Person *et al*'s motions is that summary judgment should be granted only when, considered in the light most favorable to the opposing party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### II. ERISA Preemption

#### A. *The General Rule and the Retirement Equity Act of 1984*

All parties agree that this case is governed by the Employee Retirement Income Security Act of 1974 as amended (ERISA), codified at 29 U.S.C. § 1001–1461.[4] Cross-defendants argue that ERISA completely preempts any state law right available to cross-plaintiffs. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 1551–52, 95 L.Ed.2d 39 (1987). Cross-plaintiffs contend however that this dispute is governed by 29 U.S.C. §§ 1056(d)(3)(B)(i), 1144(b)(7), which establish an exception to preemption for qualified domestic relations orders (QDROs). Retirement Equity Act of 1984, Pub.L. No. 98–397, 98 Stat. 1426 (1984). This Court considers Cross–Defendants to have the better of the argument regarding QDROs, but it finds Cross–Plaintiffs to properly allege a breach of fiduciary duties under ERISA.

ERISA comprehensively regulates employee benefit plans. 29 U.S.C. §§ 1002, 1003. As a part of its broad statutory scheme, ERISA provides for civil remedies under 29 U.S.C. § 1132. Where a plan participant or beneficiary sues to recover benefits, the action falls under 29 U.S.C. § 1132(a).

ERISA regulates benefit plans to ensure the uniformity of decision which will assist plan "administrators, fiduciaries, and participants to predict the legality of proposed actions without the necessity of reference to varying state laws." *Pilot Life Ins. Co.,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987) (internal quotation omitted). ERISA's preemption clause is sweeping, *FMC Corp. v. Holliday,* 498 U.S. 52, —, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990); 29 U.S.C. § 1144(a).

Cross–Plaintiffs maintain, however, that the exception to preemption established in the Retirement Equity Act of 1984 (REA), which amended ERISA at 29 U.S.C. §§ 1144(b)(7), 1056(d)(3) applies in the case at bar.

The REA was aimed primarily at assuring greater and more equitable opportunity for women working as employees or home-

---

**3.** Met Life's Brief In Support of Summary Judgment incorrectly names Joyce Slavik as a Cross–Plaintiff in this case. She, along with her children, are Cross–Defendants.

**4.** All section references in this opinion are to 29 U.S.C.A. (West 1985 & 1992 Supp.), unless otherwise marked.

makers to receive private pension income. *See* Camilla Watson, *Broken Promises Revisited: The Window of Vulnerability for Survivor Spouses Under ERISA*, 76 Iowa L.Rev. 431, nn. 292–378 & accompanying text (1991). The legislative history of the QDRO provisions of REA contains numerous statements indicating that Congress was focusing on the division of pension benefits in marital dissolution or dependent support situations. For example, Congressman William Clay described the QDRO provisions during a House floor debate on the legislation as follows:

> ... women may be denied their rights to pension benefits by the dissolution of a marriage by divorce, regardless of how many years she served as an economic partner to a man covered by a pension plan. Even in cases in which the State domestic relations court is willing to consider the pension an asset of the marriage and award the ex-wife a share of it, her rights have been thwarted. Pension plans have refused to honor those court orders claiming that they required an impermissible assignment of benefits and were preempted by ERISA.... In addition, the legislation creates an exception from ERISA's broad preemption of State laws for qualified domestic relations orders.

130 Cong.Rec. 13327 (1984).

REA created a system whereby pension plans would honor QDROs. The Department of Labor, in its sole statement on QDROs to date explains the change in law:

> ERISA generally requires pension plans covered by title I of ERISA to provide that plan benefits may not be assigned or alienated. Section 206(d)(3)(A) of ERISA states that section 206(d)(1) applies to an assignment or alienation of benefits pursuant to a "domestic relations order," unless the order is determined to be a "qualified domestic relations order" (QDRO). Section 206(d)(3)(A) further provides that pension plans must provide for payment of bene-

fits in accordance with the applicable requirements of any QDRO.

Department of Labor, Op AO 90–46A (December 4, 1990).[5]

A two-part inquiry must be undertaken to determine if the QDRO exception applies to the instant case: (1) Is the divorce decree provision mandating that Paula Sova be the beneficiary of a life insurance policy a QDRO? (2) If it is a QDRO, can QDROs be applied to employee welfare benefit plans?

### B. The QDRO Exception

#### 1. Whether the Decree is a QDRO

■ Cross–Defendant Met Life contends that the divorce decree fails to comply with the provisions of 29 U.S.C. § 1056(d)(3) defining a QDRO. Subparagraph (3)(C) requires that the order include the name and last known mailing address of the participant and alternate payee; the amount or percentage of benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined; the number of payments or period to which the order applies; and the specification of each plan to which it applies. § 1056(d)(3)(C).

The Sova divorce decree identifies the name of the beneficiary and the policyholder and the address of the beneficiary's attorney. It plainly intends that the full amount of benefits be paid, and it quite obviously refers to Paul Sova's employee life insurance. In short, the decree clearly contains the information specified in the statute that a plan administrator would need to make an informed decision. Nor does the decree violate the conditions of subparagraphs (D) and (E). The decree is therefore a QDRO.

#### 2. Application of the QDRO to Employee Welfare Benefit Plans

■ Cross–Defendants GM and Met Life contend that the QDRO rules do not apply to a life insurance policy because QDROs only apply to pension plans, and life insurance plans are not "pension plans" for pur-

---

**5.** A second advisory opinion was issued the same day, OP AO 90–47A, but it relied on the reasoning of the letter cited in the text. The Department of Labor has not yet issued proposed regulations on QDROs, even though the REA was enacted into law eight years ago.

poses of ERISA. Rather, life insurance plans are "employee welfare benefit plans" or simply, "welfare plans." The first subparagraph of the subsection discussing QDROs, 29 U.S.C. § 1056(d)(3)(A), states, "Each pension plan shall provide ..."

While the REA does not contain a definition of "pension plan", ERISA contains a definition of "pension plan" as:

> any plan ... established or maintained by an employer ... to the extent that by its express terms or as a result of surrounding circumstances ...—
> (i) provides retirement income to employees, or
> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, ...

29 U.S.C. § 1002(2)(A).

The same section defines "employee welfare benefit plan," as:

> "any plan, fund, or program ... maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... benefits in the event of ... death."

29 U.S.C. § 1002(1). Therefore, under ERISA, life insurance is clearly intended to be a welfare plan. Further, an examination of the GM Benefits Booklet, Exhibit A, in the Addendum to Complaint for Interpleader, shows that the life insurance policy at issue in this case does not serve the function, as some policies do, of saving money for retirement in addition to insurance. Hence, the Policy cannot be considered to fall within the definition of "pension plan" under ERISA.

That does not end the matter, however. The Tenth Circuit found the QDRO rules can apply to a life insurance case, in spite of the "pension" language:

> Because the reference in the preemption clause to section 1056(d)(3)(B)(i) does not restrict application of the statutory preemption exception to pension benefit plans, however, we interpret the exception to apply to all qualifying domestic relation orders whether they involve a pension or welfare benefit plan. Taken

together, sections 1144(b)(7) and 1056(d)(3)(B)(i) of the statute exempt divorce decrees meeting the statutory requirements from ERISA preemption.

*Carland v. Metropolitan Life Ins. Co.*, 935 F.2d 1114, 1120 (10th Cir.1991).

Section 1144(b)(7) states, "Subsection (a) shall not apply to qualified domestic relations orders (within the meaning of section 1056(d)(3)(B)(i) of this title)." Subsection (a) is the general preemption clause for ERISA. Thus, reasoned the court, all QDROs, even those applying to welfare benefit plans, are exempted from preemption.

In *Carland*, the court granted summary judgment for the Plaintiff, the ex-wife of a decedent Met Life policy holder, whose divorce decree had ordered the decedent to name his ex-wife as the beneficiary of his group life insurance. The decedent sent a copy of the decree to Met Life, but he requested that the proceeds be split between his ex-wife and another woman. In another letter, he directed that the other woman be named as sole beneficiary. After he died, his ex-wife notified Met Life of her claim, but the Company paid the other woman. The court found for the ex-wife.

In *Carland*, the Tenth Circuit considered and rejected Met Life's argument that interpreting the § 1144(b)(7) preemption exclusion clause to include QDROs with employee welfare benefit plans would impose too great a burden on plan administrators. The court noted that ERISA already requires an administrator of a pension benefit plan to investigate the marital history of a participant and determine whether a QDRO exists that could affect the distribution of benefits. *Carland*, 935 F.2d 1114 at 1122. In the instant case, since GM acts as the administrator for both pension and welfare plans for its employees, and it passes on information relevant to insurance to Met Life, the Tenth Circuit's reasoning applies with even more force.

In the case at bar, however, Cross–Defendants contend that the *Carland* approach misreads the language of ERISA, and this Court agrees. 29 U.S.C.

§ 1144(b)(7) "saves" only those QDROs "within the meaning of section 1056(d)(3)(B)(i) of this title" from preemption. Section 1056(d)(3)(B)(i) does, on its face, describe QDROs without any reference to pension plans. But that description only has "meaning" in the context of subsection 1056(d), taken as a whole.

QDROs provide an exception to the rule of § 1056(d)(1) prohibiting assignment or alienation of *pension* benefits. Congress created the preemption exception in § 1144(b)(7) to allow courts to use § 1056(d) to construe QDROs that affect pension rights. Had Congress intended to provide an exception to preemption for employee welfare benefit plans, they could easily have used language in § 1056(d) that refers to welfare plans. This interpretation is also consistent with the legislative history of the REA and the Department of Labor Advisory Opinion, *supra*. Thus, the Tenth Circuit's reading of the statute is strained, and while that court cited sound policy justifications for its approach, those policies are not sufficient to overcome the most logical reading of the statute.

Moreover, competing policy justifications clearly expressed by the Sixth Circuit in *McMillan v. Parrott*, 913 F.2d 310, 312 (6th Cir.1990) preclude an adoption of the *Carland* court's approach.

In *Parrott*, the issue was whether a broad waiver of "any and all claims" against the other spouse in a divorce decree nullified an individual's pre-divorce designation of an ex-spouse as beneficiary. The court held the designation of a beneficiary on file with the insurance company controlled. 913 F.2d at 312. The thrust of the court's opinion was that plan administrators must be free to rely upon plan documents and beneficiary designations. *Id. See also, Brown v. Connecticut General Life Ins. Co.*, 934 F.2d 1193, 1196 (11th Cir.1991) (named beneficiary entitled to policy proceeds even though the state court divorce decree had required divorced spouse to be the beneficiary until she remarried).

When confronted with *Parrott*, the *Carland* court contended that its decision "allows plan administrators to rely on designations on file with the company. However, when a plan *has notice of a divorce decree* satisfying the requirements of section 1056(d)(3)(B)(i), the administrator may not contravene Congress's intent by ignoring that decree in favor of other documents on file." *Carland*, 935 F.2d 1114, 1121–22 (my emphasis).

While this Court agrees that plan administrators are not free to ignore notice of a relevant court decree, *see infra*, had the divorce decree in the case at bar been on file, it would not constitute a QDRO within the meaning of § 1056(d). Therefore, the QDRO rules do not apply in this case.

## C. *Preemption of Cross–Plaintiff's Claims*

■ Cross–Defendants allege that because the divorce decree reflects state law, and that Cross–Plaintiffs rely upon failure to consider the divorce decree as the basis for their claim, then the claim is preempted by ERISA. This argument is flawed. ERISA provides for suits by beneficiaries against plan administrators for breaches of fiduciary duties. § 1132(a)(3). The action brought is under ERISA, not under state law.

Nor have Cross–Plaintiffs presented state law claims cloaked as ERISA claims. Cross–Plaintiffs allege facts that demonstrate a failure of the plan administrators to consider their claims in a fair review process [6]. Cross–Defendants contend, however, that because the preemption clause frees them from following the divorce decree, then they cannot have breached any duties to Cross–Plaintiffs under ERISA by failing to consider the decree. While this argument has a pleasing ring to it, Cross–Defendants' actions in this case and in previous ones regarding this particular plan undermine it.

The memos discovered by Cross–Plaintiff show that some employees in GM and Met Life thought it worthwhile to consider the divorce decree. Also, why did GM employ-

---

**6.** *See infra*, discussion of merits of Cross–Plain-   tiffs' claims.

ees tell Ms. Allison to send a copy of the divorce decree if GM was planning on ignoring it? Moreover, in an unpublished opinion earlier this year, this Court upheld the choice by Met Life to pay an ex-spouse's children rather than the named beneficiary in another case involving a divorce decree. *Metropolitan Life Ins. Co. v. Cook*, NO. 92–CV–40004–FL, (E.D. Mich., Newblatt, J.) (March 16, 1992) (unpublished op.). Thus, it would appear that Met Life and GM do, as a matter of practice, consider state court decrees of the type at issue here. Therefore, Cross–Plaintiff has a right to demand under ERISA that the plan administrators treat her claims with the same due process accorded other beneficiaries. Thus, Cross–Plaintiffs' claims are not preempted.

### III. Exhaustion of Administrative Remedies

ERISA requires that employee benefit plans provide administrative remedies for those seeking to appeal a denial of benefits. 29 U.S.C. § 1133; 29 C.F.R. § 2560.503–1. Even though ERISA does not contain an explicit exhaustion provision, several courts, including the Sixth Circuit, have treated an employee's failure to exhaust administrative remedies as barring the commencement of an ERISA claim in the courts: *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir.1991); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir.1990); *Makar v. Health Care Corp. of the MidAtlantic*, 872 F.2d 80, 83 (4th Cir. 1989); *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 825–26 (1st Cir. 1988), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988); *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1227 (11th Cir.1985), *cert. denied*, 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986); *Amato v. Bernard*, 618 F.2d 559, 567–68 (9th Cir.1980).

The rationale behind finding an exhaustion requirement in ERISA is the "strong federal interest encouraging private resolu-tion of ERISA disputes." *Makar*, 872 F.2d 80, 82. "By preventing premature interference with an employee benefit plan's remedial provisions, the exhaustion requirement enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Id.*, at 83.

■ Cross–Plaintiffs contend they fall within the traditional "futility" exception to exhaustion of administrative remedies, *Id.; Drinkwater*, 846 F.2d 821, 826; *Amato*, 618 F.2d 559, 568. This court finds, however, that the exhaustion requirement simply does not apply to Cross–Plaintiffs in the instant action. Every case cited by Cross–Defendants concerns an *employee's* appeal from denial of benefits.[7] Employees are sent copies of plans and are on notice that they must exhaust remedies. Non-employee beneficiaries, such as ex-spouses, cannot reasonably be expected to be aware of ERISA's strict rules regarding the exhaustion of administrative remedies. It is patently unreasonable to subject Cross–Plaintiffs in the case at bar to an exhaustion requirement when they have not received notice that failure to exhaust their claim would bar court review.

■ The only notice Cross–Plaintiff Allison received that she could appeal was in the second letter of denial of claims from Met Life, and that letter says nothing about an exhaustion requirement. Even if the exhaustion requirement applied to Cross–Plaintiffs, they fulfilled it in a reasonable way, given the notice they received. Cross–Plaintiff Allison attempted to appeal by her repeated telephone calls and two letters to Met Life. She was never informed that she needed to follow a particular process. Affidavit of S. Jane Allison 2–4.

■ Finally, this court agrees with Cross–Plaintiffs that the futility exception applies to the instant case. Ms. Allison

---

**7.** In *Makar*, the co-plaintiffs were husband and wife, suing over denial of coverage of health care benefits for the wife, and one of the defen-dants was the plan administrator of the husband's employer.

first contacted GM prior to the payment of the claim to Ms. Person in October. Met Life had records of Ms. Allison's claim and her divorce decree in October. Cross–Plaintiff Allison did not receive a response until January, two months after the claims had been paid to Ms. Person. Even at that point, Ms. Allison continued to seek review of her claim. Any further action on Cross–Plaintiff's part may reasonably be construed as futile.

## IV.  GM's and Met Life's Breaches of Fiduciary Duties Under ERISA

### A.  *ERISA's Standard of Review*

■■■  If the plan administrator has discretion to determine eligibility for benefits or construe terms, then the appropriate standard of review is an abuse of discretion. *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 983 (6th Cir.1991). Otherwise, the standard is *de novo* review. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989). Cross–Plaintiffs never responded in their Briefs to Cross–Defendants' argument that the appropriate standard of review is an abuse of discretion, essentially, of acting in an arbitrary or capricious manner. While one could reasonably contend that the plan administrator of a life insurance policy lacks the requisite discretion to be subject to a deferential standard of review, *see e.g., Arthurs v. Metropolitan Life Ins. Co.,* 760 F.Supp. 1095, 1098–99 (S.D.N.Y.1991), this Court has previously found the appropriate standard of review for the GM–Met Life insurance plan to be an abuse of discretion standard. *Pressley v. Metropolitan Life Ins. Co.,* 729 F.Supp. 570, 572 (E.D.Mich.1990). Therefore, to preclude summary judgment for Met Life and dismissal for GM, Cross–Plaintiffs must demonstrate that a reasonable finder of fact could find that GM and Met Life acted in an arbitrary or capricious manner in paying the claim to Ms. Person. *Bruch,* 489 U.S. at 110–111, 109 S.Ct. at 953–954; *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 983 (6th Cir.1991).

### B.  *Breach of Fiduciary Duties*

■■■  Both GM and Met Life acknowledge implicitly in their arguments that they owe Cross–Plaintiffs a fiduciary duty under ERISA. Under *Bruch,* this Court looks to principles of trust law to determine whether the plan administrator abused its discretion. 489 U.S. at 110–11, 109 S.Ct. at 953–54. *See also Berlin v. Michigan Bell Tel. Co.,* 858 F.2d 1154, 1162 (6th Cir.1988).

A reasonable fact finder could find that the companies acted arbitrarily and in violation of trust principles. GM employees, and possibly Met Life employees, *knew* about Cross–Plaintiffs' claims for the insurance prior to the time that the check was issued to Ms. Person. If Cross–Plaintiff Allison's repeated telephone calls to GM prior to payment were simply ignored, or brushed aside because of other business, then GM acted arbitrarily. GM's Regional Personnel Office should have been aware that once it had forwarded Ms. Person's claim to Met Life, Ms. Person might be paid expeditiously. Thus, after GM received notice of a second claimant, it abused its discretion if it delayed in notifying Met Life in a reasonable manner.

■■■  Similarly, it is unclear at what point Met Life learned of the claim, but it was at least prior to the cashing of the check. A reasoned decision by Met Life to pay Ms. Person rather than the Cross–Plaintiffs would clearly *not* constitute an abuse of discretion in this Circuit after *Parrott.*[8] 913 F.2d 310, 312 (6th Cir.1990). However, the Met Life memos clearly suggest that Met Life chose to delay consider-

---

8.  This Court believes, however, that Met Life should have acted in conformance with the state court decree even if it was not obliged to do so because of the privileges of ERISA preemption. Under Michigan law, there is little doubt that the proper beneficiary is the child, and that Decedent lacked authority to maintain his mother as beneficiary. *In re Monreal Estate,* 422 Mich. 704, 711, 375 N.W.2d 329 (1985); *Kasper v. Metropolitan Life Ins. Co.,* 412 Mich. 232, 313 N.W.2d 904 (1981). Met Life has chosen to pay such children in the past. *See Met Life v. Cook, supra* (unpublished op.) (Met Life chose to pay children named in divorce decree rather than named beneficiaries).

ation of Plaintiff's claim until after Ms. Person had cashed the check rather than to consider the claim.

Met Life interpleaded the survivor benefits from Decedent's employee welfare benefit plan; it should have interpleaded the life insurance claim as well, once it had notice. A fact finder could reasonably determine that by choosing not to interplead, GM and Met Life failed to "act[ ] with proper care or caution." *Restatement* (Second) Trusts § 201, comment c.

Nor does this Court find that *Parrott* proscribes this result. Certainly, ERISA provides a plan administrator with discretion to make choices about paying benefits. However, discretion implies a rational and orderly procedure in making such a decision, and an interpleader provides a mechanism to protect an administrator who acts with caution.

Cross–Defendants would have this Court find notice to be irrelevant; that only the documents on file at the time of death should control. But what if the Insurer received notice that a court had found the designation of beneficiary on file to be a forgery, or, that it was made while the policy holder was insane? Surely the administrative ease of looking only at the file would yield to a plan administrator's duty to beneficiaries under ERISA. As in those rather obvious cases here, just as well, the administrators could have interpleaded the proceeds.

When an individual claimant seeking benefits from a large bureaucracy is simply ignored until after the claim has already been paid, that smacks of a violation of fundamental fairness. The frustration that Cross–Plaintiff felt in being ignored by the Plan is evident in the letters that she sent to Met Life, placed in the record by several parties. This Court does not read *Parrott* as providing a plan administrator with the power to ignore claimants with colorable claims.

A reasonable fact finder will be able to determine whether GM or Met Life acted with an abuse of discretion in paying Ms. Person without reasonable consideration of Cross–Plaintiffs' claims or interpleading the proceeds.[9]

V. Person's *et al.* Motion

Finally, this Court addresses the Motion for Summary Judgment by Ms. Person and her co-defendants, Joyce Slavik and her children. This motion relies solely on the argument that Met Life correctly paid the claim to Ms. Person. However, this Court has determined that Met Life may have acted outside of its discretion in paying the judgment.

Cross–Defendants have not provided this Court with legal authority preventing Cross–Plaintiffs from obtaining redress from Ms. Person and her possible transferees, Ms. Slavik and her children, if GM or Met Life breached fiduciary duties to Cross–Plaintiffs. This Court therefore denies Summary Judgment at this time for Cross–Defendants, but will reconsider this motion if supplemental briefs are provided addressing (1) the basis under ERISA federal common law for prohibiting recovery against Ms. Person, and (2) against Ms. Slavik and her children. The court directs counsel for the above to consider whether there may arise a conflict of interest between his clients.

Consequently, if GM or Met Life acted with an abuse of discretion, Cross–Plaintiffs may also obtain judgment from Cross–Defendants Person, Slavik, and Ms. Slavik's children, Paul, Jr. and Shannon, unless Cross–Defendants Person, Slavik and Slavik's children come forward before trial with grounds to preclude such recovery.

Therefore, this Court DENIES ALL MOTIONS by CROSS–DEFENDANTS, and ORDERS a TRIAL to Determine whether GM and Met Life breached fiduciary duties

---

9. The parties, other than Cross–Plaintiffs, have not discussed Met Life's liability if only GM has breached a duty. Cross–Plaintiffs contend that Met Life is liable for GM's errors under an agency theory. Met Life, however, seems to be GM's agent, rather than the reverse. 29 U.S.C.

§ 1105 appears to establish joint liability for plan fiduciaries. Since the parties have not briefed that issue, however, the Court leaves the matter open, subject to a later motion by a party following a Court determination of the facts in this case.

to Cross–Plaintiffs. Cross–Plaintiffs' Motion for Fees is DENIED.

SO ORDERED.