**METROPOLITAN LIFE INS. CO., Plaintiff,**

v.

**Judy Ann FOWLER, Individually, and as Conservator For the Estates of Florisa M. Fowler and Julie A. Fowler, Minors, and Timothy Fowler and Cindy McGoldrick, Defendants.**

Civ. A. No. 94–CV–40087–FL.

United States District Court, E.D. Michigan, Southern Division—Flint.

April 15, 1996.

Randolph D. Phifer, Patterson Phifer & Phillips P.C., Detroit, MI, for Metro Life Ins.

Robert L. Segar, Dean Dean Segar & Hart P.C., Flint, MI, for Judy Ann Fowler.

Marc T. Dedenbach, Grand Blanc, MI, for Cindy McGoldrick and Timothy Fowler.

Joseph E. Baessler, Flint, MI, for Julia Fowler and Florisa Fowler.

## OPINION AND ORDER

NEWBLATT, District Judge.

This action arises out of the death of Floyd M. Fowler, an employee of General Motors Corporation ("GM"), who was provided life insurance through an ERISA[1] welfare benefits plan administered by GM and Metropolitan Life Insurance Company ("MetLife"). Following Floyd Fowler's death, claims to the insurance proceeds were submitted to MetLife by Judy Ann Fowler individually, as decedent's ex-wife; by Judy Ann Fowler on behalf of Florisa and Julie Fowler, minor children of the deceased; and by Timothy Fowler and Cindy McGoldrick, adult children of the deceased from a previous marriage.

---

1. The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

Faced with these conflicting claims, MetLife filed this interpleader action and has been dismissed from the case.

Presently pending before the Court is Judy Ann Fowler's motion for summary judgment (D.E. # 15). A summary judgment motion filed by Timothy Fowler and Cindy McGoldrick was denied by a prior order.[2] Florisa and Julie Fowler have not filed a motion, but have made an argument for entry of judgment in their favor (D.E. # 19).

## I. *Background*

Judy Ann Fowler is the former wife of Floyd M. Fowler. Their divorce judgment was entered on December 9, 1991. At the time of their divorce, Floyd and Judy Fowler had two minor children, Florisa, born March 21, 1978, and Julie, born January 21, 1988. The divorce judgment included a provision that Floyd and Judy both designate the minor children of their marriage as beneficiaries to any existing life insurance policies until termination of their support obligations:

> IT IS FURTHER ORDERED AND ADJUDGED that as further support for said children, the parties shall forthwith irrevocably designated [sic] said minor children as beneficiaries on any and all life insurance policies by virtue of their employment or any other group policies which either may have in connection with his/her employment or otherwise, and he/she shall continue the said children as the irrevocable beneficiaries of such policies until such time as the obligation to support the said children shall have been terminated....

Defendant Judy Ann Fowler's motion at exh. A, p. 9. The divorce judgment also contained a waiver of interest by each spouse in any life insurance proceeds:

> IT IS FURTHER ORDERED AND ADJUDGED that all rights to either party in and to the proceeds of any policy or contract of life insurance on the life of the other party is hereby cancelled and termi-

nated, and each party shall have no further rights, title or interest in any policy of life insurance upon the life of the other.

Defendant Judy Ann Fowler's motion at exh. A, p. 12. The divorce judgment provided for the child support obligations to continue until the minor children reached the age of 19½ years or graduated from high school, whichever occurred first.

Floyd M. Fowler was a participant in the GM Life and Disability Benefits Program, an employee welfare benefit plan governed by ERISA. The plan provides that life insurance benefits are payable to the "beneficiary of record" as of the date of the participant's death. The only beneficiary designation made by Floyd M. Fowler was on November 5, 1975, naming his then-wife Judy Ann Fowler. The question before the Court is whether the life insurance death benefits should be paid to Judy Ann Fowler, as the sole beneficiary named pursuant to plan documents, or Florisa and Julie Fowler, as beneficiaries named in the divorce judgment.

## II. *Standard of Review*

█ Summary judgment should be granted only when, considered in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this action, there is no dispute of material fact and this matter is ripe for disposition by summary judgment.

## III. *ERISA Preemption*

In her claim, Judy Ann Fowler relies upon *McMillan v. Parrott*, 913 F.2d 310 (6th Cir. 1990), arguing that ERISA requires the Court to enforce the rights of the beneficiary designated pursuant to the plan documents without reference to any extraneous source.

---

**2.** While Timothy Fowler and Cindy McGoldrick's claim was dismissed for lack of standing, the Court has considered their arguments in evaluating the other claims to Floyd Fowler's life insurance benefits. Had none of the remaining claimants deserved judgment in their favor, the Court

could have directed payment to Floyd Fowler's intestate estate. Nevertheless, the Court need not reach that issue as Florisa and Julie Fowler are entitled to full payment of the life insurance benefits.

Judy Ann Fowler argues that the waiver contained in the divorce judgment is ineffective because *McMillan* requires the Court to look first to the designation of beneficiary language of the plan which, in this case, is unambiguous and directs disbursement of benefits to Judy Ann Fowler. In *McMillan*, however, the court of appeals addressed only the effectiveness of a general waiver in a divorce judgment relinquishing " 'any and all' claims ... [that one party] might have against the other," *id.* at 311; the court did not address the exemption of qualified domestic relations orders ("QDRO") from ERISA preemption, 29 U.S.C. §§ 1144(b)(7), 1056(d)(3)(B)(i). While *McMillan* is applicable to the question of waiver, the court's lack of discussion of QDROs distinguishes its holding from application to that issue.

### A. *General Preemption*

■ Section 1144(a) of ERISA specifically preempts "any and all State laws" which "relate to" an ERISA plan. 29 U.S.C. § 1144(a); *McMillan*, 913 F.2d at 311. ERISA's broad preemption scheme clearly applies to a state law which affects a plan participant's designation of beneficiary. *McMillan*, 913 F.2d at 311. This, however, does not end the inquiry. In determining the effect of a state judgment the Court must also consider the QDRO exemption, which plays an integral role in ERISA's statutory scheme. *See Carland v. Metropolitan Life Ins. Co.*, 935 F.2d 1114, 1121–22 (10th Cir. 1991).

■ The clear statutory language of § 1144 provides that:

> *Except as provided in subsection (b)* of this section, the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....

29 U.S.C. § 1144(a) (emphasis added). Subsection (b)(7) provides that:

> Subsection (a) shall not apply to qualified domestic relations orders (within the meaning of section 1056(d)(3)(B)(i) of this title)....

29 U.S.C. § 1144(b)(7). It is clear from this language that if a state law judgment qualifies as a QDRO, it is exempt from ERISA

preemption generally and, in fact, can affect the designation of beneficiary provision of an ERISA plan.

### B. *Qualified Domestic Relations Orders*

Qualified domestic relations orders are defined in 29 U.S.C. § 1056(d)(3)(B)(i):

> (i) the term "qualified domestic relations order" means a domestic relations order—
>
> (I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and
>
> (II) with respect to which the requirements of subparagraphs (C) and (D) are met....

As appropriately noted by Judy Ann Fowler, in a previous case this Court held that the QDRO exemption applies only to the assignment of plan benefits of ERISA-regulated *pension* plans and not to employee *welfare* benefit plans. *See Metropolitan Life Ins. Co. v. Person*, 805 F.Supp. 1411, 1417–18 (E.D.Mich.1992) (holding that QDRO definition must be interpreted within meaning of § 1056(d) generally, which affects only assignment or alienation of pension rights). Upon further reflection and with consideration of subsequent rulings by other courts, the Court believes it wrongly decided this issue in *Person* and by this order hereby reverses its opinion and holding regarding the QDRO exemption.

Of particular persuasiveness to the Court's change of position on this issue are a Report and Recommendation entered by Magistrate Judge Marc L. Goldman in *Metropolitan Life Ins. Co. v. Woodham*, No. 93–CV–75470–DT, 1995 WL 429259 (E.D.Mich. Jan. 24, 1995) (formerly assigned No. 93–CV–40464–FL), and the Seventh Circuit's opinion in *Metropolitan Life Ins. Co. v. Wheaton*, 42 F.3d 1080, 1082–85 (7th Cir.1994). In *Woodham*, Magistrate Judge Goldman considered the reasoning of *Person* in his own examination of the proper statutory application of the QDRO exemption. The Magistrate Judge concluded that, consistent with the general statutory scheme, the specific language of § 1144(b)(7) provides an exemption to the

general ERISA preemption of § 1144(a) for all QDROs meeting the statutory requirements of § 1056(d)(3)(B)(i), regardless of whether its affect is upon a pension or welfare plan. *Woodham,* 1995 WL 429259 at *4–5; *see also Wheaton,* 42 F.3d at 1083–84.

The Magistrate Judge reasoned:

In interpreting the scope of § 1144(b)(7)'s exclusion of QDROs "within the meaning of § 1056(d)(3)(B)(i)" from ERISA preemption, the [*Person*] court noted that § 1056(d)(3)(B)(i), on its face, defines QDROs without reference to either pension or welfare benefit plans. However, the court further noted that the "description only has meaning in the context of subsection 1056(d), taken as a whole." *Id.* at 1418. Section 1056(d) prohibits the assignment or alienation of *pension* benefits and does not mention welfare benefit plans. 29 U.S.C. § 1056(d)(1); *see Guidry v. Sheet Metal Workers Nat. Pension Fund,* 493 U.S. [365] 369, 371, 110 S.Ct. 680, 683–84, 684–85, 107 L.Ed.2d 782 (1990) [citing *Mackey v. Lanier Collection Agency & Svs., Inc.,* 486 U.S. 825, 837, 108 S.Ct. 2182, 2189–90, 100 L.Ed.2d 836 (1988) ]; [*Metropolitan Life Ins. Co. v.] Pearson,* 848 F.Supp. [1326, 1333 (E.D.Mich.1994) ]; [further citations omitted]. Accordingly, the court concluded that the QDRO exception to the ERISA preemption doctrine was only applicable to pension benefit plans, not to welfare benefit plans. The court found such an interpretation to be the "most logical reading" of the statute. *Person,* 805 F.Supp. at 1418. It also found such an interpretation to be consistent with the ERISA policy favoring efficient administration of claims as described by the Sixth Circuit in *McMillan v. Parrott,* 913 F.2d 310, 312 (6th Cir.1990) [plan administrators must be free to rely upon plan documents and beneficiary designations]. *Id.*

*Person,* however, is not the only case which considers the scope of the QDRO exception to the preemption doctrine. Indeed, in *Carland v. Metropolitan Life Ins. Co.,* 935 F.2d 1114 (10th Cir.1991), the Tenth Circuit, in making the identical analysis, reached the opposite conclusion. [*See also Metropolitan Life Ins. Co. v. Benevent,* No. 90 Civ. 6768 (LAP), 1993 U.S.Dist. Lexis 14875, *8–9, 1993 WL 437757 (S.D.N.Y. Oct. 22, 1993) (relying on and following *Carland* ) ]. In *Carland,* the ex-wife of a deceased MetLife employee sued MetLife for wrongful denial of insurance proceeds because the company had paid part of the proceeds to the designated policy beneficiary despite the existence a divorce decree requiring that the benefits be paid to the ex-wife. The court found that the divorce decree was a QDRO and held that § 1144(b)(7)'s exception to preemption applies to all QDROs regardless of whether they involve a pension benefit plan or a welfare benefit plan. *Id.* at 1120. In reaching this conclusion, the court reasoned that "because the reference in the preemption clause to § 1056(d)(3)(B)(i) does not restrict application of the statutory preemption exception to pension benefit plans, we interpret the exception to apply to all [QDROs]...." *Id.* at 1119–20. In addition, the court found that applying the QDRO preemption exception to both pension and welfare plans serves the general goals of ERISA and does not create "unreasonable administrative burdens for the plan administrator." *Id.* at 1120.

My review of the statutes involved in this case convinces me that the reasoning of the *Carland* court is more persuasive than that of the *Person* court and I therefore recommend that the court apply the QDRO exception to preemption to the welfare benefit plan in issue. Resolution of this dispute is clearly an issue of statutory interpretation. It is well-settled that when interpreting a statute, a court must first look to its language. *United States v. Alvarez–Sanchez,* —— U.S. ——, ——, 114 S.Ct. 1599, 1603 [128 L.Ed.2d 319] (1994); *Reves v. Ernst & Young,* [507] U.S. [170], [177], 113 S.Ct. 1163, 1169 [122 L.Ed.2d 525] (1993); *Barker v. Chesapeake & Ohio R.R.,* 959 F.2d 1361, 1366 (6th Cir.1992), *cert. denied,* [506] U.S. [1000], 113 S.Ct. 603 [121 L.Ed.2d 539] (1992). Generally, absent ambiguity, the plain meaning of the statute controls the court's interpretation. *Reves,* [507 U.S. at 177] 113 S.Ct. at 1169; *Kelley v. E.I. DuPont de Nemours & Co.,*

17 F.3d 836, 842 (6th Cir.1994); *Helmac Products Corp. v. Roth (Plastics) Corp.*, 814 F.Supp. 560, 566 (E.D.Mich.1992).

However, I find the language of § 1144(b)(7) to be ambiguous. It is not clear whether the language of § 1144(b)(7), describing the applicable QDROs as those "within the meaning of § 1056(d)(3)(B)(i)," refers to the specific definition for QDROs contained in § 1056(d)(3)(B)(i) or whether it refers to § 1056(d) as a whole. Thus, the court must look "not only to the particular statutory language, but also to the design of the statute as a whole and to its object and policy." *United States v. Honaker*, 5 F.3d 160, 161 (6th Cir.1993); *cert. denied*, — U.S. —, 114 S.Ct. 1226 [127 L.Ed.2d 571] (1993).

It is a fundamental rule of statutory construction that a statute is to be read as a whole. *United States v. Nordic Village, Inc.*, [503] U.S. [30], [34–36] 112 S.Ct. 1011, 1015 [117 L.Ed.2d 181] (1992); *United States v. Branson*, 21 F.3d 113, 116 (6th Cir.1994). Moreover, statutory language should be read in its pertinent context rather than in isolation. *Oates v. Oates*, 866 F.2d 203, 206 (6th Cir.1989), *cert. denied*, 490 U.S. 1109 [109 S.Ct. 3163, 104 L.Ed.2d 1025] (1989). Finally, it is well settled that specific statutory language prevails over general statutory language. *FDIC v. Bates*, No. 93–3800, 1994 U.S.App.Lexis 35116, *7–8 [42 F.3d 369] (6th Cir. Dec. 15, 1994) [citing *Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 52 S.Ct. 322, 76 L.Ed. 704 (1932) ]; *see also Gallenstein v. United States*, 975 F.2d 286, 290 (6th Cir.1992).

In determining whether the QDRO preemption exception of § 1144(b)(7) applied to a welfare benefit plan, the court in *Person* employed these rules and considered § 1056(d) as a whole. The court observed that § 1056(d)(1) prohibits the assignment or alienation of pension benefits only, and does not refer to welfare benefits. The court noted that "[h]ad Congress intended to provide an exception to preemption for employee welfare benefit plans, they could have easily used language

in § 1056(d) that refers to welfare plans." *Person*, 805 F.Supp. at 1418.

While this analysis is persuasive, I nonetheless conclude that § 1144, not § 1056(d), is the provision which governs the question of whether the QDRO preemption exception applies to welfare plans. Section 1144(a) provides that ERISA shall preempt state laws relating to "any employee benefit plan." Section 1144(b)(7) states that "subsection (a) shall not apply to QDROs...." 29 U.S.C. §§ 1144(a), 1144(b)(7). Thus, as noted by the court in *Carland*, § 1144 does not restrict application of the preemption exception to pension benefit plans, but rather, applies to any employee benefit plan. *Carland*, 935 F.2d at 1119–20. Moreover, § 1144(b)(7) refers to § 1056(d)(3)(B)(i) specifically, not to § 1056(d) generally. In my opinion, this indicates that the reference to the language of § 1056(d)(3)(B)(i) is definitional in nature, outlining the requisites of a QDRO for purposes of § 1144. A proper application of the rules of statutory construction, therefore, requires that the QDRO preemption exception be applied to both pension benefit plans and welfare benefit plans.

In making this analysis, it is also important to consider the underlying purposes of ERISA preemption and the QDRO exception. "Statutory construction should be informed both by reference to the underlying policies of Congress and by common sense." *Martin v. Local 480, Intl. Bd. of Teamsters*, 946 F.2d 457, 461 (6th Cir. 1991). There are many policies underlying ERISA preemption, but the most obvious is to provide uniformity and clarity in the law and in the administration of employee benefit plans. The same policies underlie ERISA's reliance on a plan participant's designation of beneficiaries. On the other hand, there are competing policies underlying the QDRO exception to preemption. These policies include ensuring the support of families, enforcing state court judgments, and deferring to the states in a traditional area of state regulation.

Applying the QDRO preemption exception to welfare benefit plans, as well as pension plans, would not significantly in-

terfere with the former policies and would promote the latter policies. As noted by the court in *Carland,* the need for plan administrators to investigate domestic relations decrees for pension plan distributions suggests that no additional burdens will be placed upon plan administrators by applying the QDRO exception equally to welfare benefit plans. *See Carland,* 935 F.2d at 1120; *see also Pearson,* 848 F.Supp. at 1332. Moreover, there is simply no logical reason to distinguish between pension benefit plans and welfare benefit plans in applying the QDRO exception to preemption. Thus, policy considerations and common sense also dictate that the QDRO preemption exception be applied to both types of plans.

*Woodham,* 1995 WL 429259 at *3–5.

In revisiting this issue, the Court finds the reasoning employed by the Magistrate Judge in *Woodham,* as well as the opinions of the Seventh Circuit in *Wheaton* and the Tenth Circuit in *Carland,* more persuasive than this Court's previous opinion in *Person.* It is more consistent with the statutory scheme of ERISA in both specific application of § 1144 preemption and general protection of a participant's dependent beneficiaries to require plan administrators to disburse welfare plan benefits in accordance with a designation of beneficiaries mandated within a QDRO.[3] Moreover, such a requirement would not be unduly burdensome to plan administrators, who already are charged with "investigat[ing] the marital history of [participants] and determin[ing] whether a domestic relations order exists that could affect the distribution of [pension plan] benefits." *Carland,* 935 F.2d at 1122.

■ For these reasons, the Court finds that *Metropolitan Life Ins. Co. v. Person,* 805 F.Supp. 1411, was wrongly decided and it is the opinion of this Court that the QDRO exemption from ERISA preemption must apply equally to assignments of benefits under both pension benefit plans and welfare benefit plans.

---

3. As noted by the Magistrate Judge, such an application ensures the support of families and

### C. *Analysis of Divorce Judgment*

■ The divorce judgment entered on December 9, 1991 meets all the requirements of a QDRO as defined by 29 U.S.C. § 1056(d)(3)(B)(i). Clearly, the divorce judgment at issue was a "domestic relations order," as defined by § 1056(d)(3)(B)(ii), which "creates . . . an alternate payee's right to . . . receive all or a portion of the benefits payable with respect to a participant under a plan," § 1056(d)(3)(B)(i)(I). Furthermore, the divorce judgment meets each of the requirements of subparagraph (3)(C). The divorce judgment identifies the names of the minor children, specifies that they are to remain in their mother's custody until the age of eighteen, and identifies the residence and mailing address of both the children's parents. § 1056(d)(3)(C)(i). The divorce judgment clearly intends for the full amount of benefits to be paid, § 1056(d)(3)(C)(ii), at the time of the insured participant's death, § 1056(d)(3)(C)(iii). Moreover, the divorce judgment specifies "any and all life insurance policies by virtue of . . . employment," which plainly and certainly includes Floyd M. Fowler's employer-provided life insurance through the GM Life and Disability Benefits Program. § 1056(d)(3)(C)(iv). Finally, the divorce judgment does not violate any of the conditions contained in subparagraphs (D) and (E). Thus, the divorce judgment is a QDRO. *See Wheaton,* 42 F.3d at 1084–85; *Carland,* 935 F.2d at 1120 (divorce decrees constitute QDROs where statutory requirements can be discerned from decree).

### IV. *Conclusion*

■ Because the 1991 divorce judgment is a QDRO, its affect upon the designation of beneficiaries to Floyd M. Fowler's employer-provided life insurance plan is not preempted by ERISA. 29 U.S.C. § 1144(b)(7). As administrator of the GM Life and Disability Benefits Program, MetLife is required to distribute the life insurance benefits pursuant to the provisions of Floyd M. Fowler's divorce judgment. *Cf. Carland,* 935 F.2d at 1122. The divorce judgment clearly creates and assigns, to the benefit of Florisa and

defers to state authority in matters traditionally of state concern.

Julie Fowler, a right of each to receive one-half of the death benefits, as Floyd M. Fowler's support obligations had not yet terminated at the time of his death.

Judy Ann Fowler's argument that the waiver contained in the divorce judgment was ineffective need not be addressed, as she is not entitled to the life insurance proceeds in any case. The arguments advanced by Timothy Fowler and Cindy McGoldrick likewise are rejected.

### V. *Disposition*

For all the foregoing reasons, Judy Ann Fowler's motion for summary judgment (D.E. # 15) is DENIED and summary judgment is GRANTED in favor of Judy Ann Fowler as Conservator for the estate of Florisa M. Fowler and Julie A. Fowler. Within ten days of the date of this order, counsel for Florisa and Julie Fowler shall submit a judgment for proper distribution of the interpled funds.

SO ORDERED.