**Beatrice Hinds CARLAND,**
**Plaintiff–Appellee,**

v.

**METROPOLITAN LIFE INSURANCE**
**COMPANY, Defendant–Appellant.**

No. 90–3014.

United States Court of Appeals,
Tenth Circuit.

June 4, 1991.

Rehearing Denied June 21, 1991.

Alvin Pasternak (William J. Toppeta, with him on the briefs), New York City, for defendant-appellant.

Andrew L. Oswald, Martindell, Swearer, Cabbage, Ricksecker & Hertach, Hutchinson, Kan., for plaintiff-appellee.

Before TACHA and BALDOCK, Circuit Judges, and KANE, District Judge.*

TACHA, Circuit Judge.

Defendant-appellant Metropolitan Life Insurance Company appeals a grant of summary judgment in favor of plaintiff-appellee Beatrice Carland in an action for wrongful denial of insurance proceeds. On appeal, Metropolitan Life argues the district court erred by finding: (1) the determination of beneficiaries under a life insurance policy is subject to de novo review, (2) the divorce decree intended Beatrice Carland to be the irrevocable and sole primary beneficiary of the entire proceeds of the group policy, and (3) payment of life insurance benefits according to the company's beneficiary designation forms fails to satisfy the plan administrator's obligation under ERISA. Metropolitan Life also argues the district court improperly considered the affidavit of J. Richards Hunter, Beatrice Carland's divorce attorney, in determining the intent of the parties to the divorce decree. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. FACTS

Ralph Carland, an employee of Metropolitan Life, was a holder of a group life insurance policy, Metropolitan Group Policy No. 50 G.L., certificate number 134181. The group policy is part of an employee welfare benefit plan governed by the Employee Retirement Income Security Act (ERISA or Act), 29 U.S.C. §§ 1001 *et seq.* During Ralph Carland's marriage to Beatrice Carland, he designated her the primary beneficiary of this policy's proceeds.

* The Honorable John L. Kane, Jr., Senior United States District Judge for the District of Colora-

On September 4, 1964, Ralph and Beatrice Carland were divorced. At that time, Beatrice Carland was a homemaker and Ralph Carland was employed by Metropolitan Life as district manager of the Hutchinson, Kansas district office. Following the divorce, Ralph Carland was employed in a supervisory position at the New York City office of Metropolitan Life. Sometime after divorcing Beatrice Carland, Ralph Carland married Olive Kohlmeyer Carland.

Ralph and Beatrice Carland negotiated a property settlement agreement that was incorporated into a divorce decree entered by the Reno County District Court in Kansas. The decree provides in pertinent part:

> The court further finds that the parties hereto have entered into an agreement which contains the mutual covenants of the parties hereto with regard to that for which they would jointly ask the Court to decree regarding child custody and visitation, child support, alimony, property division and expenses. An executed copy of said agreement is attached hereto and made a part hereof.
>
> . . . .

[I]n accordance with said agreement Defendant is ordered to pay the premiums on, and to make irrevocable designation of Plaintiff as the sole primary beneficiary under and of, the policies of insurance on the life of Defendant listed in Schedule "A" appended to the Settlement Agreement to which reference has been made herein.

Schedule A of the property settlement agreement lists specific life insurance policies that Ralph Carland agreed to designate Beatrice Carland the sole primary beneficiary of and the face value of those policies:

do, sitting by designation.

SCHEDULE "A"

Policies of Insurance on Life of Ralph C. Carland

| Policy No. | Company | Face Amount |
|---|---|---|
| 17 083 285A | Metropolitan Life Ins. Co. | $ 5,000.00 |
| 22 127 306A | Metropolitan Life Ins. Co. | 10,000.00 |
| 21 300 423 | New York Life Ins. Co. | 5,000.00 |
| 21 372 985 | New York Life Ins. Co. | 5,000.00 |
| Ctf. 134181 | Metropolitan Group Ins. | Current value, less 1000.00 |

On February 15, 1974, Ralph Carland sent a letter to Metropolitan Life. The letter states:

Please note that the attached schedule is from my divorce decree of September 4, 1964, Case 13926. The decree provides that my Group Life Insurance is designated to go to my divorced wife—Beatrice Hinds Carland—in the amount of the current value, less $1,000.00 as of the date of the decree.

Therefore, I direct the Company to make the following Beneficiary designations:

*Primary beneficiaries:*

BEATRICE HINDS CARLAND—divorced wife, $13,000.00 (Current value, less $1,000 as of date of divorce, September 4, 1964)

OLIVE KOHLMEYER CARLAND—present wife, Group Insurance over and above $13,000.00

*Secondary Beneficiaries:*

RALPH C. CARLAND, JR. and CHRISTOPHER BRIEN CARLAND (Share and share alike or all to survivor)

I further request that the beneficiary designation be effective as of the date of this memo of record.

In March 1974, Ralph Carland completed two change of beneficiary forms for the group policy. One names Beatrice Carland primary beneficiary for $13,000 and Olive Carland primary beneficiary for the amount in excess of $13,000. The other form designates Olive Carland sole primary beneficiary for all proceeds of the group policy. It is unclear which form was completed last.

Ralph Carland died on April 9, 1987. Within three days, the Tulsa, Oklahoma office of Metropolitan Life received a letter from Beatrice Carland notifying the company of her claim to the policy proceeds. The letter enclosed a copy of the relevant portions of the decree. The Tulsa office sent Beatrice Carland claim application forms and requested a death certificate for Ralph Carland.

While waiting for the death certificate to arrive, Beatrice Carland spoke with a Metropolitan Life employee in the company's office in Wichita who assured her she was sole primary beneficiary of the group policy. However, Beatrice Carland was informed later that the company intended to pay the proceeds to another individual. Although Beatrice Carland supplied company officials with documentation supporting her claim, Metropolitan Life paid Olive Carland the entire proceeds of the group policy. Metropolitan Life later informed Olive Carland of Beatrice Carland's claims to the proceeds of the group policy. Olive Carland agreed to resolve the issue of the conflicting beneficiary designation forms by returning $13,000 of the proceeds. Metropolitan Life then paid Beatrice Carland this amount plus interest.

Beatrice Carland filed suit against Metropolitan Life in Reno County District Court for wrongful denial of insurance proceeds. Metropolitan Life removed the action to federal district court pursuant to 28 U.S.C. § 1441. The insurance company filed a motion to dismiss or for summary judgment, arguing any obligation under ERISA had been satisfied by payment of the proceeds to the beneficiaries of record. Beatrice Carland responded she stated a claim under ERISA and moved for summary

judgment. The district court granted Beatrice Carland's motion for summary judgment. *Carland v. Metropolitan Life Ins. Co.*, 727 F.Supp. 592 (D.Kan.1989).

## II. DISCUSSION

### A. Standard of Review

 We review a summary judgment under the same standard a district court applies pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). In determining whether a genuine issue of material fact remains, we view all facts and inferences in the light most favorable to the nonmoving party. *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir.1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law regarding a claim identifies which facts are material in a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

██ Metropolitan Life contends we only should review a beneficiary determination for an abuse of discretion by the plan administrator. In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), the Supreme Court held a denial of benefits challenged under ERISA is reviewed under a de novo standard unless the benefit plan gives the administrator discretionary authority to construe the terms of the plan. Here, the group policy does not grant Metropolitan Life such discretion. Rather, the plan requires the company to pay proceeds to the beneficiary of record. We find no reason to apply an abuse of discretion standard in this action.

### B. ERISA

#### 1. *Preemption in General*

Both parties agree this case is governed by ERISA. The ERISA preemption clause provides in pertinent part: "[T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). This clause establishes a broad area of exclusively federal concern preempting state law claims that "relate to" an employee benefit plan. *See FMC Corp. v. Holliday*, — U.S. —, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). The Supreme Court has stated the preemption clause is "deliberately expansive" and should be given its "broad common-sense meaning." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46–47, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987) (citing *Shaw v. Delta Air Lines*, 463 U.S. 85, 97–98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)); *see also Settles v. Golden Rule Ins. Co.*, 927 F.2d 505, 508 (10th Cir.1991). The Supreme Court also has held state common law tort and contract claims for improper processing of benefits claims are preempted by ERISA. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–63, 107 S.Ct. 1542, 1545–46, 95 L.Ed.2d 55 (1987); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 57, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987). We therefore must determine whether Beatrice Carland's state law claim for wrongful denial of insurance proceeds is preempted and converts to a removable federal ERISA claim over which we may exercise jurisdiction.

#### 2. *Conversion of State Law Claims*

██ In *Metropolitan Life*, the Supreme Court explained the relation between ERISA preemption and removal jurisdiction. The Court pointed out that federal preemption is ordinarily a defense to state law claims. *Metropolitan Life*, 481 U.S. at 63, 107 S.Ct. at 1546. As a defense, preemption will not appear on the face of a well-pleaded complaint and therefore will not authorize removal to federal court. *Id.; see Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). The Court noted where Congress has completely preempted a particular area of the law, however, any civil complaint raising a claim in that area is necessarily federal in character. *Metropolitan Life*, 481 U.S. at 63, 107 S.Ct. at 1546; *see also, e.g., Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of*

*Machinists & Aerospace Workers,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (claims preempted by section 301 of the LMRA are removable federal claims). A state law claim will convert to a federal claim only if the claim is preempted by ERISA and within the scope of ERISA's civil enforcement provisions. *Metropolitan Life,* 481 U.S. at 64, 107 S.Ct. at 1546.

■ The civil enforcement provision of ERISA states: "A civil action may be brought ... by a ... beneficiary ... to recover benefits due ... under the terms of [the] plan." 29 U.S.C. § 1132(a). A "beneficiary" is defined as "a person designated by a participant ... who is or may become entitled to a benefit" under the plan. *Id.* § 1002(2)(8). Beatrice Carland is a beneficiary within the statutory definition because Ralph Carland designated her the sole primary beneficiary for the group policy during their marriage. As a designated beneficiary, she may be entitled to benefits under that policy. Additionally, Beatrice Carland's claim for wrongful denial of insurance proceeds from an ERISA welfare benefit plan clearly is "related to" that plan and, therefore, is preempted. Because Beatrice Carland's state claim to recover benefits under the group policy falls within the scope of ERISA's civil enforcement provision and is preempted by ERISA, the claim against Metropolitan Life is converted to an ERISA claim over which we have removal jurisdiction.

### 3. *A Statutory Exception for Preemption of Divorce Decrees*

■ Metropolitan Life argues ERISA's preemptive powers should nullify any effect the state divorce decree has on the company's obligation to pay the policy proceeds. In determining whether ERISA preempts the divorce decree, we look to congressional intent, "whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977) (quoted in *Delta Air Lines,* 463 U.S. at 95, 103 S.Ct. at 2899). We begin with the statutory language, assuming the ordinary meaning of that language expresses Congress's intent. *See Holliday,* 111 S.Ct. at 407 (citing *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985)).

The statute defines "State law" subject to preemption to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(a). Although this language apparently would include claims based on divorce decrees issued by state courts, subsection (b)(7) explains the preemption clause "shall not apply to qualified domestic relations orders [QDROs] (within the meaning of section 1056(d)(3)(B)(i) of this title)." *Id.* § 1144(b)(7).

According to section 1056(d), a court order relating to spousal property rights is a QDRO if it "creates or recognizes the existence of an alternate payee's right to ... receive all or a portion of the benefits payable" under a plan. *Id.* § 1056(d)(3)(B)(i)(I). To qualify under the statute, a court order must include: (1) the name of the participant and the name and mailing address of an alternate payee covered by the order, (2) the amount or percentage of benefits payable to an alternate payee or a manner of determining the amount or percentage, (3) the number of payments or period affected by the order, and (4) the plan to which the order applies. *Id.* § 1056(d)(3)(B)(i)(II), (d)(3)(C). The statute also includes three general prohibitions for a QDRO. The order may not require a plan to provide: (1) any type of benefit or option not provided under the plan, (2) increased benefits, or (3) payment of benefits to an alternate payee required to be paid to another alternate payee under a previous QDRO. *Id.* § 1056(d)(3)(B)(i)(II), (d)(3)(D).

Section 1056(d)(3), which lists the requirements for a QDRO, exempts qualifying domestic relations orders from the general anti-alienation requirement in section 1056(d) applicable to pension benefit plans. 29 U.S.C. § 1056(d)(3). Because the reference in the preemption clause to section 1056(d)(3)(B)(i) does not restrict application of the statutory preemption exception to

pension benefit plans, however, we interpret the exception to apply to all qualifying domestic relation orders whether they involve a pension or welfare benefit plan. Taken together, sections 1144(b)(7) and 1056(d)(3)(B)(i) of the statute exempt divorce decrees meeting the statutory requirements from ERISA preemption. The general goals of ERISA are served by this interpretation of the preemption exception because a divorce decree meeting the requirements contained in section 1056(d) provides all the necessary information to determine the identity of a beneficiary without creating unreasonable administrative burdens for the plan administrator.

Here, the domestic relations order recognizes Beatrice Carland's right to receive policy benefits. The decree denotes the name of the participant, Ralph Carland, and the beneficiary, Beatrice Carland, and provides the names and address of her attorneys. Schedule A specifies that the decree affects the group policy, certificate number 134181. The schedule states Beatrice Carland should receive the "current value" of the policy, less one thousand dollars. Further references to Beatrice Carland as the "irrevocable" and "sole primary beneficiary" indicate her entitlement is based on the value of the group policy at the time of Ralph Carland's death. Because the divorce decree includes all the information required by the statute and does not involve any of the prohibitions, the divorce decree entitling Beatrice Carland to the group policy proceeds, less one thousand dollars, is not preempted by ERISA.

■ Metropolitan Life argues an issue of fact remains regarding the amount of benefits Beatrice Carland was intended to receive under the settlement agreement. Construction of the provisions of a settlement agreement, like any other question of contract construction, is a question of law. *See Florom v. Elliott Mfg.*, 867 F.2d 570, 575 (10th Cir.1989); *Resort Car Rental Sys., Inc. v. Chuck Ruwart Chevrolet, Inc.*, 519 F.2d 317, 320 (10th Cir.1975). Only when ambiguity exists on the face of a contract is a question of fact presented. *State Farm Mut. Auto. Ins. Co. v. Fer-*

*nandez*, 767 F.2d 1299, 1301 (9th Cir.1985). The presence of ambiguity in a contract term must be determined as a matter of law. *Royal Cup, Inc. v. Jenkins Coffee Serv., Inc.*, 898 F.2d 1514, 1523 (11th Cir. 1990); *Fernandez*, 767 F.2d at 1301. An ambiguous contract term is one "reasonably susceptible to more than one interpretation." *Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chem. Corp.*, 684 F.2d 776, 780 (11th Cir.1982); *see Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1361 (11th Cir. 1988), *cert. denied*, 488 U.S. 1041, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989); *see also* J. Calamari & J. Perillo, Contracts §§ 3–14 (3d ed.1987).

Metropolitan Life concedes the company was under no obligation to pay the proceeds until Ralph Carland's death. Therefore, we reject as unreasonable the company's suggestion that Ralph Carland intended "current value" to signify some hypothetical value of the group policy at the time of divorce. Likewise, we dismiss the possibility that Ralph Carland made an illusory promise by agreeing to designate Beatrice Carland the sole primary beneficiary of a policy he should have known, as an insurance man, had a zero value at the time of the divorce. In light of language describing Beatrice Carland as the "irrevocable" and "sole primary" beneficiary under the policies in Schedule A, the terms of the settlement agreement are not ambiguous. The term "current value" has only one meaning in this context—the value of the policy at the time of Ralph Carland's death. Because our construction of "current value" is a legal determination not involving extrinsic evidence, the district court's consideration of the affidavit of Beatrice Carland's divorce attorney is immaterial.

### 4. *Metropolitan's Obligation Under ERISA and the Plan*

■ Metropolitan Life contends payment of life insurance benefits according to the company's beneficiary designation forms satisfies any affirmative duty imposed by ERISA or the plan. The fiduciary provision of ERISA provides: "[A] fiduci-

ary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S.C. § 1104. Section VII of the group policy states: "Upon receipt by the Insurance Company of satisfactory proof, in writing, that any Employee insured hereunder shall have died, the Insurance Company shall pay ... to the Beneficiary of record of Employee, the amount of Life Insurance ... in force hereunder...." Further, section VI(D) of the policy requires the insured, Ralph Carland, and his employer, Metropolitan Life, to furnish "all information ... which the [Metropolitan Life] Insurance Company may reasonably require ... with regard to the happenings of any event ... affecting or relating to the Life Insurance of any Employee."

Ralph Carland apparently complied with his policy obligation by sending a copy of the divorce decree to Metropolitan Life when he attempted to change beneficiaries in March 1974. Metropolitan Life also received notice of Beatrice Carland's claim under the decree when she sent the letter in April 1987 to the Tulsa office and enclosed a copy of the relevant provisions and later sent the company a certified copy of the decree. Because Metropolitan Life received the divorce decree and was on notice, the company had a duty to consider that decree as part of "the record" in determining the beneficiary of record under this ERISA-governed plan. Metropolitan Life's duty to pay the appropriate beneficiary, taking into account the qualifying divorce decree, is part of the fiduciary responsibilities Congress referred to in section 1104 of the statute. See 29 U.S.C. § 1104.

Metropolitan Life argues ERISA requires a plan administrator to look only at the plan documents to determine the beneficiary of a welfare benefit plan. In summarizing section 1104 as simply requiring fiduciaries to "discharge [their] duties with respect to a plan ... in accordance with the documents and instruments governing the plan," Metropolitan Life fails to mention Congress included the phrase "insofar as the instruments are consistent with the provisions of this subchapter or subchapter III of this chapter." See 29 U.S.C. § 1104(a)(1)(D). Blindly paying the proceeds as specified in the insurance company's beneficiary designation forms would be inconsistent with the statutory preemption exception that recognizes the validity of domestic relations orders affecting beneficiary designations. See 29 U.S.C. § 1056. Because a divorce decree satisfying the statutory requirements becomes part of the record when a plan receives notice, a plan administrator complying with ERISA must take that decree into account in making a beneficiary determination.

Metropolitan Life cites a recent Sixth Circuit decision, *McMillan v. Parrott*, 913 F.2d 310, 312 (6th Cir.1990), as support for its decision to disregard the divorce decree in determining the beneficiary of record. *Parrott* involved the issue whether a broad waiver of "any and all claims" against the other spouse in a divorce decree nullifies an individual's pre-divorce designation of an ex-spouse as beneficiary. The court in *Parrott* held the designation of a beneficiary on file with the insurance company controls in determining what effect a divorce decree may have on a beneficiary designation. *Id.* at 312.

Although the issues involved in the two cases differ, our holding resolves several concerns the Sixth Circuit raised in *Parrott*. One reason for the court's holding in *Parrott* was that the decree provided for a general waiver of claims and did not "specifically refer to the spouse's rights as beneficiary" in the ERISA plan. *Id.* ERISA requires specific information in a divorce decree for that decree to escape preemption and qualify as a beneficiary designation for an ERISA-governed plan. Based on the statutory requirements in section 1056, a plan administrator can determine with certainty whether language in a divorce decree affects the payment of benefits. Similar to the *Parrott* decision, our holding allows plan administrators to rely on designations on file with the company. However, when a plan has notice of a divorce

**1122**

decree satisfying the requirements of section 1056(d)(3)(B)(i), the administrator may not contravene Congress's intent by ignoring that decree in favor of other documents on file. We further agree with the Sixth Circuit that Congress intended ERISA plans to be "uniform in their interpretation and simple in their application"—a goal that is well-served when all plan administrators honor divorce decrees meeting the statutory requirements.

Metropolitan Life argues any duty beyond payment of proceeds to the individual listed on the most recent beneficiary designation forms imposes a burdensome obligation on plan administrators that conflicts with their fiduciary responsibility to preserve and protect the assets of the plan. However, ERISA already requires an administrator of a pension benefit plan to investigate the marital history of a participant and determine whether a domestic relations order exists that could affect the distribution of benefits. 29 U.S.C. § 1056; *see Fox Valley & Vic. Const. Wkrs. Pension Fund v. Brown*, 897 F.2d 275, 282 (7th Cir.1990). Our holding based on the statute and plan obligations only requires that administrators of welfare benefit plans also consider the marital history of a participant when paying benefits. Further, the statutory requirement a plan administrator have notice of the beneficiary's name, address, and the amount or percentage of a particular benefit plan ensures the decree provides an administrator with information needed to process a claim efficiently so that assets are preserved and beneficiaries' interests are served.

Metropolitan Life's conduct relating to Beatrice Carland disregarded the heart of the fiduciary provision requiring plan administrators to discharge their duties "solely in the interests of the participants and beneficiaries." Metropolitan Life effectively ignored the interests of a beneficiary by participating, knowingly or unknowingly, in Ralph Carland's attempt to avoid his legal obligation to Beatrice Carland under the divorce decree. Because Metropolitan Life has not shown any genuine dispute of material fact remains, we hold as a matter of law Beatrice Carland is entitled to the entire proceeds of the group policy, less one thousand dollars, as the divorce decree requires. We AFFIRM.