METROPOLITAN LIFE INSURANCE
COMPANY, Plaintiff,

v.

Diana J. BARLOW and Pam
E. Wheeler, Defendants.

No. 94–CV–75272–DT.

United States District Court,
E.D. Michigan,
Southern Division.

April 18, 1995.

Gilbert Y. Rubenstein, Rubenstein, Chittle & Smith, Flint, MI, for Metropolitan Life Ins. Co.

Jon T. Warren, Flint, MI, for Diana Barlow.

Stanley T. Dobry, Warren, MI, for Pam E. Wheeler.

*ORDER DENYING PLAINTIFF MET-LIFE'S AND DEFENDANT BAR-LOW'S MOTIONS FOR SUMMARY JUDGMENT AND GRANTING DE-FENDANT WHEELER'S MOTION FOR SUMMARY JUDGMENT*

HACKETT, District Judge.

Sixteen years before his death, Lawrence J. Larson named his wife Diana J. Larson (a/k/a Diana J. Barlow) beneficiary on his ERISA life insurance plan. Shortly after naming Diana J. Larson his beneficiary, he and his then beneficiary wife divorced. As part of the divorce decree, Diana J. Larson waived all interest to and in his life insurance plan, but he never changed the beneficiary designation on the life insurance documents. Upon his death, his ex-wife and daughter filed competing claims for his ERISA life insurance benefits. Decedent's ex-wife Diana J. Barlow (a/k/a Diana J. Larson) claims she is entitled to the benefits because she is the designated beneficiary on the life insurance forms. Decedent's daughter Pam Wheeler claims the benefits are payable to her through her father's estate.

Plaintiff Metropolitan Life Insurance Co. (MetLife) brought this declaratory judgment action seeking a ruling that the life insurance benefits are payable to decedent's ex-wife as opposed to decedent's daughter. *See* 29 U.S.C. § 1132; 28 U.S.C. § 2201. Three motions for summary judgment are pending. Plaintiff MetLife, decedent's ex-wife, and decedent's daughter have each filed a separate motion for summary judgment. For the reasons stated below, summary judgment is granted in favor of decedent's daughter Pam Wheeler; MetLife and decedent's ex-wife's motions are denied.

BACKGROUND

Lawrence J. Larson was employed as an hourly employee for General Motors Corporation (GM). As part of his employment, his employer provided him with an ERISA life insurance plan referred to as the GM Life and Disability Benefits Program. Under the terms of the employee benefit plan, GM delegated an insurance company, MetLife, to act as claims fiduciary and plan administrator. On June 28, 1977, participant named his daughter Pam Wheeler his beneficiary. At that time, participant's daughter was twenty-four years old.

On October 7, 1977, he married Diana J. Barlow (a/k/a Diana J. Larson). On October 14, 1977, he named his then wife Diana J. Larson his beneficiary. At that time, participant's wife was twenty-four years old. Less than two years after marrying, on July 23, 1979, he and Diana J. Barlow divorced. Pursuant to the divorce decree, Diana J. Larson resumed her maiden name, Diana J. Barlow. The divorce decree provided that Barlow would have no beneficiary interest in any of her ex-husband's life insurance policies. The decree specifically provided:

IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff (Diana J. Barlow) shall hereafter have no further interest as beneficiary or otherwise in and to any life insurance policies, endowment or annuity contracts standing in the name of or insuring the life of the Defendant; and the Defendant shall hereafter have no further interest as beneficiary or otherwise in and to any life insurance policies, endowment or annuity contracts standing in the name of or insuring the life of the Plaintiff (Diana J. Barlow).

The above-quoted provision of the divorce decree states a waiver of Barlow's interest in any of her ex-husband's life insurance policies. At the time the divorce decree was executed, it is undisputed that participant had an ERISA life insurance plan through his GM employer. Thus, the above quoted waiver applied to that life insurance plan which is at the crux of this lawsuit.

Despite the language in the divorce decree quoted above, Larson never changed the beneficiary designation on his life insurance

plan. He died on August 12, 1993. At that time, $26,000 in life insurance proceeds became payable under his plan. On September 23, 1993, his daughter Pam Wheeler filed a claim for these life insurance benefits. She submitted a letter, a copy of her father's divorce decree, and a formal claim statement which had been provided to her by MetLife. The ERISA plan administrator received her claim on September 27, 1993. Two days later, on September 29, 1993, the plan administrator noted on Wheeler's claim statement that a rival claim was pending. Eight months later, on May 17, 1994, decedent's ex-wife filed a claim for these benefits.

. Plaintiff MetLife now seeks a declaratory judgment that the benefits are payable to decedent's ex-wife notwithstanding the divorce decree.

### STANDARD FOR SUMMARY JUDGMENT

■ Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

"[T]he standard for determining whether summary judgment is appropriate is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co. Inc.,* 879 F.2d 1304, 1310 (6th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat the otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine*

issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10 (emphasis in original).

■ The Sixth Circuit has held that trial courts considering a motion for summary judgment may not make findings of fact. The movant must conclusively show "that there exists no genuine issues as to a material fact and that the evidence together with all inferences to be drawn therefrom must be considered in the light most favorable to the party opposing the motion." *Watkins v. Northwestern Ohio Tractor Pullers Ass'n,* 630 F.2d 1155, 1158 (6th Cir.1980) (citations omitted). The substantive law governs the determination of which facts are material. "Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

■ If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 270, 88 S.Ct. 1575, 1583. Mere allegations or denials in the non-movant's pleadings will not meet this burden. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The non-moving party to a summary judgment motion cannot rest on its pleadings to avoid summary judgment. It must support its claim with some probative evidence. *Kraft v. United States,* 991 F.2d 292, 296 (6th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993).

### DISCUSSION

There are no disputed facts in this lawsuit. The issue of whether decedent's ex-wife or daughter is entitled to the death benefits is solely a question of law for the court's determination.

The parties dispute whether state law or ERISA governs. Plaintiff MetLife argues

that it must pay the benefits to Barlow because she is the beneficiary of record on the ERISA plan. Defendant Barlow makes the same argument. Defendant Wheeler, on the other hand, argues that the divorce decree and Michigan law M.C.L. § 552.101 control. Wheeler claims that decedent's ex-wife is prohibited from recovering any benefits under the life insurance plan because she waived all interest in the plan pursuant to the parties' divorce decree. Wheeler relies on Michigan law, M.C.L. § 552.101, which provides that a judgment of divorce "shall determine all rights of the wife in and to the proceeds of any policy or contract of life insurance, endowment, or annuity upon the life of the husband." Thus, Wheeler argues that she is entitled to the insurance proceeds through her father's estate.

## I. *ERISA PREEMPTION*

The first question the court must resolve is whether ERISA or state law applies. Plaintiff MetLife and defendant Barlow argue that ERISA controls based on the ERISA preemption clause set forth at 29 U.S.C. § 1144(a). That section provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *Id.* The courts have broadly applied the preemption clause cited above finding that it is "deliberately expansive." *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). Wheeler argues, however, that the state law divorce decree is not preempted by ERISA and must be enforced by this court on the grounds that the decree constitutes a qualified domestic relations order [QDRO].

■ ERISA provides that QDROs are exempt from preemption. 29 U.S.C. § 1144(b)(7). Section 1144(b)(7) provides that the ERISA preemption clause, 29 U.S.C. § 1144(a), "shall not apply to qualified domestic relations orders." *Id.* In support of her argument that the divorce decree constitutes a QDRO, Wheeler relies on a report and recommendation issued in a similar lawsuit. *Metropolitan Life Ins. Co. v. Woodham,* No. 93–75470 (E.D.Mich. Jan. 24, 1995) (formerly assigned to Flint No. 93–40464). In that case, MetLife filed an interpleader action to determine who was entitled to life insurance benefits under an ERISA plan where competing claims had been filed by decedent's ex-wife, who was the designated beneficiary on the plan, and decedent's son, whom the divorce decree required that decedent name as his beneficiary. Slip Op. at 2. MetLife argued that the plan designation controlled and the divorce decree was preempted by ERISA and thus, was unenforceable. The magistrate judge rejected MetLife's argument, and determined that the divorce decree controlled. The magistrate judge held that the divorce decree constituted a QDRO which was exempt from ERISA preemption. Slip Op. at 12.

Wheeler argues that the same result should be reached in this case. That is, the court should enforce the divorce decree and award the life insurance benefits to her. MetLife contends, however, that *Woodham* was incorrectly decided and that the QDRO preemption exception applies only to pension plan benefits and not to welfare plan benefits. *See Metropolitan Life Ins. Co. v. Person,* 805 F.Supp. 1411, 1418 (E.D.Mich.1992). Because ERISA life insurance plans are welfare benefit plans, MetLife asserts that the QDRO preemption exception is inapplicable here. In addition, MetLife contends that the provision at issue is not a QDRO. This court does not reach the issue of whether the QDRO preemption exception applies to welfare plans because there is no question that the provision of the divorce decree at issue is not a QDRO.[1]

ERISA defines a QDRO at 29 U.S.C. § 1056(d)(3)(B)(i). That provision states in relevant part:

---

1. The court notes that the Sixth Circuit has not addressed the issue of whether the QDRO preemption exception applies to welfare plans. *See Metropolitan Life Ins. Co. v. Person,* 805 F.Supp. 1411 (E.D.Mich.1992) (QDROs only apply to pension plans). The Tenth Circuit, however, has held that the QDRO preemption exception does apply to welfare plans. *Carland v. Metropolitan Life Ins. Co.,* 935 F.2d 1114, 1118 (10th Cir.), *cert. denied,* 502 U.S. 1020, 112 S.Ct. 670, 116 L.Ed.2d 761 (1991).

(B) For purposes of this paragraph—

(i) the term "qualified domestic relations order" [QDRO] means a domestic relations order

(I) which creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

(II) with respect to which the requirement of subparagraphs (C) and (D) are met.

*Id.* Under the above quoted statutory definition, it is clear that the divorce decree provision at issue in this lawsuit does not constitute a QDRO. "The QDRO provisions are designed to apply in situations in which pension benefits are attached by a state court for the benefit of a third party." *Metropolitan Life Ins. Co. v. Pearson,* 848 F.Supp. 1326, 1331 (E.D.Mich.1994). The QDRO exception is centered on the assignment or alienations of benefits by a participant, not the waiver of a right to payment of benefits made by a designated beneficiary. *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275, 279 (7th Cir.), *cert. denied,* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990). Courts have found divorce decrees to constitute QDROs in cases where the divorce decree explicitly requires that the benefits be paid to a specific beneficiary, usually to the participant's spouse or child. *See e.g. Carland v. Metropolitan Life Ins. Co.,* 935 F.2d 1114 (10th Cir.) *cert. denied,* 502 U.S. 1020, 112 S.Ct. 670, 116 L.Ed.2d 761 (1991) (divorce decree required benefits to be paid to ex-wife); *Metropolitan Life Ins. Co. v. Person,* 805 F.Supp. 1411, 1416 (E.D.Mich.1992) (divorce decree required benefits to be paid to participant's minor child). The provision in the divorce decree before the court is not a QDRO because it does not require that anyone be maintained as a beneficiary. Instead, the provision waives Barlow's beneficiary interest in her ex-husband's ERISA life insurance plan. This provision is not a QDRO and thus, the divorce decree is not exempt from ERISA preemption.

■ The court must decide the issue presented under ERISA. This is true because ERISA provides that federal law shall supersede all state laws which "relate to" an ERISA plan. 29 U.S.C. § 1144(a). There is no question that when a plan beneficiary sues to recover benefits under an ERISA life insurance plan, the action is governed by ERISA. 29 U.S.C. § 1132(a). In a case similar to the one now under consideration, the Sixth Circuit held that the "designation of beneficiaries plainly relates to these ERISA plans, and we see no reason to apply state law on this issue." *McMillan v. Parrott,* 913 F.2d 310, 311 (6th Cir.1990). *See Brandon v. Travelers Ins. Co.,* 18 F.3d 1321 (5th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 732, 130 L.Ed.2d 635 (1995); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983); *Fox Valley, supra; Lyman Lumber Co. v. Hill,* 877 F.2d 692, 693 (8th Cir.1989). Having determined that there is no QDRO which exempts this case from ERISA preemption, and that the claim presented clearly relates to an ERISA plan, the court must decide the action based upon ERISA statutory and common law.

## II. *WAIVER*

■ The issue presented is whether a divorced spouse who was designated as the beneficiary prior to divorce may later recover death benefits in contravention of a valid divorce decree in which she explicitly waived her right to those benefits.

MetLife and decedent's ex-wife argue that the waiver set forth in the divorce decree is ineffective. They contend that ERISA statutory law narrowly defines "beneficiary" and that the "beneficiary" must be determined solely by the beneficiary designated by the plan participant on the life insurance forms. In support of this argument, they cite ERISA's definition of "beneficiary" as a "person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Plaintiff also cites the life insurance plan itself which provides that "The amount of Life Insurance is payable to the beneficiary of record of the

employees in the event of death from any cause while the employees is insured under the Plan for Life Insurance." Furthermore, MetLife argues that the written document must control in order to effectuate the ERISA policies of uniformity, simple and effective administration, and the avoidance of double liability or litigation. *Pilot Life,* 481 U.S. at 52, 107 S.Ct. at 1555–56; *Parrott,* 913 F.2d at 312.

■ Although MetLife and decedent's ex-wife have properly cited the ERISA definition of "beneficiary," they have failed to cite any ERISA provision which defines how a plan beneficiary could waive her right to benefits. In fact, no such statutory definition exists. *See Fox Valley,* 897 F.2d at 280. In addition, their analysis ignores the growing body of federal common law which recognizes that a plan beneficiary may effectively waive her right to benefits pursuant to a divorce decree. Where the divorce decree sets forth a clear waiver of a spouse's interest in an ERISA plan, and that waiver is made voluntarily and in good faith, ERISA common law requires that the court enforce the divorce decree. *Brandon,* 18 F.3d at 1324–25; *Fox Valley,* 897 F.2d at 282; *Lyman Lumber Co.,* 877 F.2d at 693.

The waiver provision at issue in this lawsuit is similar to the waiver which the Seventh Circuit enforced under ERISA common law in *Fox Valley & Vicinity Constr. Wkrs. Pension Fund v. Brown,* 897 F.2d 275 (7th Cir.1990). In that case, the Seventh Circuit sitting en banc addressed the issue which this court is now considering. In *Fox Valley,* an ERISA fund brought an interpleader action to determine the proper beneficiary under decedent's life insurance plan where there were competing claims filed by decedent's ex-wife and mother. *Id.* at 277. The plan participant named his wife as the beneficiary on the ERISA documents. *Id.* Shortly thereafter, the participant and his wife divorced and entered into a property settlement agreement which divested the wife of any right to ERISA benefits. *Id.* The property settlement agreement contained the following proviso:

> The parties each waive any interest or claim in and to any retirement, pension, profit-sharing and/or annuity plans resulting from the employment of the other party.

*Id.* Despite the divorce decree, decedent failed to change the designated beneficiary on the plan itself. *Id.* In deciding whether the mother or ex-wife was entitled to death benefits, the Seventh Circuit first looked to ERISA statutory law to determine what constitutes a proper waiver of rights to ERISA benefits. *Id.* at 280. Finding that the statute was silent on the issue, the Seventh Circuit noted that federal courts have an obligation to "fashion federal common law rules to govern ERISA suits." *Id.* at 281. The Seventh Circuit held that the provision of the divorce settlement waiving the ex-wife's interest in ERISA benefits was enforceable under ERISA and thus, the mother was entitled to the death benefits. *Id.* at 282.

In *Fox Valley,* as in the case presently before the court, decedent's ex-wife argued that ERISA's policy interests of efficiency and simple administration required that the plan documents control. The Seventh Circuit rejected those arguments and explained:

> The ability of a spouse to waive rights to a benefit through a specific waiver in a divorce settlement has been recognized by many courts and we adopt that rule for purposes of ERISA. [Decedent's ex-wife] contends that such a rule will work against ERISA's need for uniformity and bring uncertainty into the administration of the plan. We are not convinced by these arguments. As we have noted, federal courts are charged with creating federal common law rules to govern ERISA, and the creation of such federal rules provide the needed uniformity. We also disagree with [decedent's ex-wife's] assertion that our decision imposes burdensome obligations on plan administrators. No such additional burdens will be imposed because under the ERISA statutory scheme, a plan administrator must investigate the marital history of a participant and determine whether any domestic relations orders exist that could affect the distribution of benefits.

*Id.* at 281–82 (internal citations omitted). This court finds the well-reasoned opinion of the Seventh Circuit persuasive. Contrary to the arguments of MetLife and decedent's ex-wife, enforcing the waiver provision of the divorce decree will not thwart the objectives of ERISA, but rather will satisfy the policies of ERISA and concomitantly, afford the requisite respect and finality state court divorce decrees deserve.

MetLife's argument that ERISA uniformity will be preserved only if the plan documents control is at odds with the growing federal common law in this area. In at least three circuits, the plan documents do not control where there is a valid waiver to the contrary set forth in a divorce decree. In addition to the Seventh and Eighth Circuits, *see Fox Valley, Lyman Lumber Co., supra,* the Fifth Circuit also recognizes that ERISA plan administrators must consider benefit waivers set forth in divorce decrees. *Brandon v. Travelers Ins. Co.,* 18 F.3d 1321 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 732, 130 L.Ed.2d 635 (1995). In *Brandon,* the court held that decedent's ex-wife waived her right to ERISA benefits as set forth in her divorce decree despite the fact that decedent had failed to remove her name as beneficiary on the plan documents. *Id.* at 1327. In *Brandon,* decedent's ex-wife brought suit after the ERISA plan administrator refused to pay her life insurance benefits. Although she was still the named beneficiary on the plan, she had signed a divorce decree which provided that she was "divested of all rights, title, interest, and claim in and to ... [any] benefit program existing by reason of Petitioner's past, present, or future employment." *Id.* at 1323. The Fifth Circuit ruled that the ex-wife had waived her ERISA benefits pursuant to the divorce decree. *Id.* at 1327. The court rejected arguments that the plan documents must control, explaining:

> We find that the federal common law approach outlined by the court in *Fox Valley* to be the most persuasive resolution of the issues of this case. Federal respect for state domestic relations law has a long and venerable history. When courts face a potential conflict between state domestic relations law and federal law, the strong presumption is that state law should be given precedence:

> > The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law ... This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern.

*Id.* at 1326 (quoting *DeSylva v. Ballentine,* 351 U.S. 570, 580, 76 S.Ct. 974, 979–80, 100 L.Ed. 1415 (1956)). This court finds the reasoning of the Fifth Circuit applicable to the facts presented here.

Plaintiff and Barlow also cite *McMillan v. Parrott,* 913 F.2d 310 (6th Cir.1990) in support of the proposition that the beneficiary designation controls and supersedes any state law divorce decree to the contrary. That case is distinguishable from the case presently before the court. In *Parrott,* the Sixth Circuit recognized that an ERISA plan beneficiary may waive her right to benefits pursuant to a divorce settlement. *Id.* at 312. To be effective, however, the waiver "must specifically refer to the spouse's rights as beneficiary in an ERISA plan." *Id.* at 312. In *Parrott,* the Sixth Circuit found that the broad waiver provision in the divorce settlement did not specifically refer to the wife's beneficiary interest in the ERISA plan, and thus, was not an effective waiver. *Id.* In that case, the provision in the divorce decree merely stated the each spouse relinquished "any and all" claims he or she might have against the other. *Id.* at 311.

Plaintiff and Barlow argue that the same result should be reached in this case. Unlike the facts presented in *Parrott,* however, in the instant case the divorce decree specifically waived Barlow's interest in her husband's life insurance plan. The decree contains a provision which explicitly states:

> IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff shall hereafter have no further interest as beneficiary or otherwise in and to any life insurance policies, endowment or annuity contracts standing in the name of or insuring the life

of the defendant; and the Defendant shall hereafter have no further interest as beneficiary or otherwise in and to any life insurance policies, endowment or annuity contracts standing in the name of or insuring the life of the Plaintiff.

Decedent's ex-wife does not dispute that the waiver was knowing, voluntary, and made in good faith. Under these circumstances, the divorce decree was a bona fide waiver of her right to the insurance policy proceeds and this court is bound to carry out the provisions of the agreement signed by the parties. Accordingly, the insurance benefits are payable to decedent's daughter Pam Wheeler through decedent's estate.

For the reasons stated above,

IT IS ORDERED that defendant Pam Wheeler's motion for summary judgment hereby is GRANTED.

IT IS FURTHER ORDERED that defendant Diana Barlow's motion for summary judgment hereby is DENIED.

IT IS FURTHER ORDERED that plaintiff MetLife's motion for summary judgment hereby is DENIED.